**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| vs. | CRIMINAL NO: 3:20-727-MGL |
| KEVIN MARSH, | |
| Defendant. | |

## DEFENDANT KEVIN MARSH'S SENTENCING MEMORANDUM

Defendant Kevin Marsh, by and through his counsel, respectfully submits this memorandum (this "Sentencing Memorandum") and the accompanying exhibits, and requests that the Court accept the recommended sentence, agreed upon by the parties after extensive negotiations, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Rule 11(c)(1)(C)").  As set forth in more detail in this Sentencing Memorandum, the recommended sentence agreed upon by the parties is sufficient, but not greater than necessary, to achieve the ends of justice and all the goals of sentencing. 18 U.S.C. § 3553(a) ("Section 3553(a)").

### I. THE PARTIES HAVE AGREED TO RECOMMEND TO THE COURT A SENTENCE OF 24 MONTHS IMPRISONMENT PURSUANT TO RULE 11(c)(1)(C)

This matter is now before the Court at sentencing pursuant to a Rule 11(c)(1)(C) plea agreement negotiated with the United States of America, as represented by the U.S. Attorney's Office for the District of South Carolina, and the State of South Carolina, as represented by the Office of the Attorney General (collectively, the "Government").

As reflected in the plea agreement and its addendum (collectively, the "Plea Agreement") filed with this Court on February 24, 2021, Kevin and the Government agreed to the following

terms: (i) Kevin would waive Indictment and arraignment and plead guilty before this Court to an Information charging conspiracy to commit mail and wire fraud in violation of Title 18, United States Code, Section 371; (ii) Kevin would plead guilty before the South Carolina State General Sessions Court to Obtaining Property by False Pretenses in violation of South Carolina Code Section 16-13-240(1); (iii) Kevin would pay federal criminal forfeiture and/or state criminal restitution in the amount of $5,000,000, and pay the amount in full by the date of the entry of his plea; (iv) Kevin would provide the Government full, complete and truthful information about which he has knowledge as requested by the U.S. Attorney's Office and Attorney General's Office, and would testify fully and truthfully before any grand juries, trials or other proceedings if called upon to do so by the Government; (v) the Government would file a motion for downward departure pursuant to U.S.S.G. § 5Kl.l, provided that Kevin cooperated and otherwise complied with the terms and conditions of the Plea Agreement and that his cooperation was deemed by the Government as providing substantial assistance in the investigation or prosecution of another person; and (vi) pursuant to such motion and Rule 11(c)(1)(C), the appropriate sentence for the disposition of this case is 24 months (irrespective of any fines and/or forfeitures), to be served in the Federal Bureau of Prisons, followed by concurrent terms of supervised release.[1]

  Kevin has already substantially discharged his obligations under the Plea Agreement. Kevin entered his guilty pleas before this Court and the State General Sessions Court on February 24, 2021.  On the very same day he entered his guilty pleas and publicly accepted responsibility for his actions, Kevin paid $5,000,000 into an escrow account to be distributed per the instructions of the State of South Carolina.  In addition, Kevin has cooperated fully with both federal and state

---

[1] Pursuant to the terms of the Plea Agreement, the state sentence shall be concurrent to the federal sentence and Kevin's active incarceration is to be served exclusively in the Federal Bureau of Prisons. Kevin shall receive full credit against this state sentence for time incarcerated in the Federal Bureau of Prisons.

authorities in their ongoing investigations of events surrounding the V.C. Summer nuclear project, and he will continue to do so.  Indeed, Kevin's cooperation began before the Plea Agreement was entered.  In total, Kevin has spent no less than 33 hours over the course of eight days of meetings with the Government, answering their questions fully and truthfully, and providing substantial assistance in the investigation and prosecution of other persons. Attorneys with the Grand Jury Division of the South Carolina Attorney General's Office have advised that Kevin provided and promises to continue to provide substantial cooperation to state authorities.  As this Court will hear from the Government, Kevin's cooperation has been extraordinary:  he contributed directly and materially to the investigation and prosecution of others involved in the V.C. Summer nuclear project.[2]

## II.  THE RECOMMENDED SENTENCE IS SUFFICIENT IN LIGHT OF THE SECTION 3553(A) FACTORS

In view of the facts and circumstances of this case, we submit that a sentence of 24 months imprisonment satisfies the Section 3553(a) factors, applied both collectively and individually. First, Kevin's personal history and characteristics, including the fact that he is a first-time, non-violent offender, weigh in favor of a sentence of 24 months imprisonment.  Second, the nature and circumstances of the offense, which occurred during the final months of the V.C. Summer nuclear project, support the sentence.  Third, the recommended sentence of 24 months imprisonment is sufficient to achieve the sentencing goal of just punishment.  Fourth, the recommended sentence of 24 months imprisonment furthers the sentencing goals of protecting the public, deterrence and

---

[2] *See, e.g.*, Indictment, *United States v. Benjamin*, No. 3:21-cr-525 (D.S.C. Aug. 18, 2021) (charging former Westinghouse executive Jeffrey Alan Benjamin with conspiracy in violation of 18 U.S.C. Section 1349, wire fraud in violation of 18 U.S.C. Sections 1343 and 2, securities fraud in violation of 18 U.S.C. Sections 1348(1) and 2, and causing the failure to keep accurate corporate records in violation of 15 U.S.C. Section 78m(b)(2)(A) and 18 U.S.C. Section 2; Information, *United States v. Churchman*, No. 3:21-cr-278 (D.S.C. May 21, 2021) (charging former Westinghouse executive Carl Dean Churchman with making a false statement to a federal agent in violation of 18 U.S.C. Section 1001).

rehabilitation. Finally, a greater term of imprisonment would create unwarranted sentencing disparities. We therefore submit that the recommended sentence of 24 months imprisonment, agreed upon by the parties pursuant to Rule 11(c)(1)(C), is sufficient to satisfy the purposes of sentencing.

### A.     Kevin's Personal History And Character

Those who know Kevin well consistently describe him as a humble, caring man who puts the needs of others ahead of his own. His strong Christian lifestyle is revealed in letter after letter submitted to the Court by those who know Kevin both personally and professionally. These letters also make clear just how much of an aberration the conduct at issue in this case is for Kevin.

Kevin joined South Carolina Electric & Gas Co., the principal subsidiary of SCANA Corp. ("SCANA" or the "Company"), in 1984 as group manager of technical accounting. Over the next 34 years, Kevin worked tirelessly and demonstrated a sincere commitment, not just to the Company, but also to SCANA's individual employees and customers. Numerous letters to the Court echo this commitment. As described in one letter submitted to the Court by a former colleague, "Kevin was an extremely generous boss and was always willing to make time to meet with and take care of the needs of employees." Rowland Letter at 1. Kevin "continuously encouraged employees in whatever way he could to help them be successful and achieve their professional goals." *Id.* Another former colleague recalled that, although some of Kevin's predecessors rarely bothered to meet with the workforce, "Kevin often went to the field, interacted with many front-line employees of all levels, learned their roles, needs and issues, and connected with them." Cannon Letter at 1. Kevin often wrote personal "notes of sympathy and letters of congratulations to employees who experienced significant events in their lives," recalled another former colleague. Mikell Letter at 2. This individual explained that "these notes were not written

out of a sense of responsibility or because it was the right thing to do, but were written due to [Kevin's] sincere interest in individuals." *Id.*

Those who know Kevin well also know that Sue, Kevin's grade-school sweetheart and wife of 46 years, is his greatest priority. Kevin's love for Sue is evident in the words of those who submitted letters to the Court. As Kevin's counsel, we can also attest that his focus has remained steadfast on Sue's needs above his own throughout the Government's investigation and this Court's proceedings. Sue currently suffers from terminal and incurable metastatic breast cancer. As she described to the Probation Department, the stress of her diagnosis combined with Kevin's impending incarceration has been a "double-whammy" that has greatly affected her physical and mental health. Presentence Investigation Report ("PSR") at 23. Notwithstanding Kevin's efforts to shield her from the consequences of this case, there have been times when Sue has reached her breaking point. The weight of that unbearable burden is impossible to put into words. Kevin hopes to be designated as soon as possible so that he can serve his time and then return home to care for Sue.

**B.    Nature And Circumstances Of The Offense**

The matter before the Court arises out of Kevin's tenure as SCANA's Chairman and Chief Executive Officer ("CEO"). Upon sentencing, Kevin will become the first person to be sentenced to prison in connection with the failure of the V.C. Summer nuclear project. Kevin understands that as Chairman and CEO of SCANA, he bears responsibility for an outcome that no one—least of all Kevin Marsh—wanted to see. Nonetheless, the recent indictment of former Westinghouse Electric Co. ("Westinghouse") executives, and the Government's allegations that material information was intentionally and criminally withheld from SCANA and its 45% co-owner, Santee Cooper, helps to frame Kevin's wrongdoing.

Kevin admits that he had an affirmative duty to alert South Carolina regulators of increased risks that could impact the timing and cost of completing the V.C. Summer nuclear project. In late 2016, as rumors and unconfirmed fears about the financial well-being of the nuclear project's primary contractor, Westinghouse, whirled throughout the halls of SCANA and its partner Santee Cooper, Kevin learned directly from Westinghouse leadership of increased schedule risks and chose not to alert South Carolina regulators at that time—deciding instead to take a "wait and see" approach and gather additional information.[3]  Kevin accepts that he must be held accountable.[4]

As the Government stated before the Court on February 24, 2021: "[T]he case against Mr. Marsh is one of nondisclosure of risk and uncertainty regarding the project towards the end of the endeavor. It is not one of a theft and this was not a Ponzi scheme by SCANA or by Mr. Marsh." Transcript of Rule 11 Hearing at 36 (Feb. 24, 2021). The essence of the harm caused by Kevin's non-disclosure was to delay deliberation on a question that, by early 2017, should have had the benefit of regulatory discretion. The Government explained: "Had disclosure been made, the PSC could have continued on the path it did or it could have examined abandonment proceedings before July 30, 2017. . . . [R]ates would have remained stable, but the examination of abandonment . . . to cease the project would have occurred earlier." *Id*. at 36–37. Abandonment, if determined to be the correct path, could have occurred at most six months earlier.

---

[3] We note that many others knew exactly the same information that Kevin knew but Kevin, as CEO and Chairman of SCANA, held responsibilty for alerting South Carolina regulators of increased risks.

[4] In contrast, former Westinghouse vice president Carl Churchman has pleaded guilty to making a false statement to a federal agent regarding his role in reporting schedule information for the nuclear project to executives of SCANA and Santee Cooper. Plea, *United States v. Churchman*, No. 3:21-cr-278 (D.S.C. June 10, 2021). Former Westinghouse senior vice president Jeff Benjamin has also been indicted on counts including wire fraud and conspiracy to conceal material information about the project schedule and the ability of Westinghouse to complete the project by critical schedule deadlines, as well as concealing material information on the costs of completing the nuclear project from executives of SCANA and Santee Cooper. Indictment, *United States v. Benjamin*, No. 3: 21-cr-525 (D.S.C. Aug. 18, 2021).

### C.     Need To Provide For A Just Punishment

The recommended sentence of 24 months imprisonment provides for a sufficient and just punishment in this case.  First, this sentence will require Kevin to serve a significant custodial sentence in federal prison—two years away from his wife (who may be unable to visit Kevin given her weakened immune system and heightened risk of severe illness from COVID-19), their two daughters and their young grandchildren.  Second, as agreed upon pursuant to the Plea Agreement and Rule 11(c)(1)(C), Kevin has paid a substantial financial penalty in the amount of $5,000,000. Third, Kevin has already incurred several collateral consequences as a result of this case, including the notoriety and shame that accompanies being prosecuted for the failure of the V.C. Summer nuclear project.  Fourth, the imposition of a greater term of imprisonment would be unnecessarily harsh given Kevin's age and health conditions.  A greater term of imprisonment would undoubtedly exacerbate these conditions.  Further, a greater term of imprisonment would cruelly and unnecessarily abbreviate the time Kevin has remaining with his wife Sue before she succumbs to her metastatic breast cancer.

### D.     Need To Protect The Public And Provide For Adequate Deterrence And Rehabilitation

The recommended sentence of 24 months imprisonment is also sufficient to achieve the sentencing goal of deterrence.  Kevin does not pose a risk of recidivism.  He is a first-time, non-violent offender with a longstanding history of community service and charity that is documented in numerous letters to the Court.  Kevin has also foregone his professional career altogether, eliminating any potential for further risk to the public.[5]  With respect to the sentencing goal of

---

[5] Kevin retired from his position as SCANA's Chairman and CEO on January 1, 2018, and he has no intention of seeking future employment.  Furthermore, in connection with its civil complaint filed on February 27, 2020, the Securities and Exchange Commission is seeking an officer and director bar against Kevin. *See* Complaint ¶ 21, *SEC v. SCANA Corp.*, *et al*., No. 3:20-cv-00882 (D.S.C. Feb. 27, 2020).

general deterrence, that goal has been achieved through the significant publicity this case has received. If a similarly-situated executive is not deterred from engaging in fraudulent conduct by the prospect of being subjected to highly-publicized regulatory proceedings, civil litigation, multi-year state and federal criminal investigations, permanent loss of one's career and reputation, a substantial financial penalty and 24 months imprisonment, then it is nearly inconceivable that any term of imprisonment would serve as a deterrent.

### E.    Need To Avoid Unwarranted Sentencing Disparities And Promote Consistency In Sentencing

The 24-month sentence agreed upon by the parties avoids unwarranted sentencing disparity. As described by the Government, "[T]he case against Mr. Marsh is one of nondisclosure of risk and uncertainty regarding the project towards the end of the endeavor. It is not one of a theft and this was not a Ponzi scheme by SCANA or by Mr. Marsh." Transcript of Rule 11 Hearing at 36 (Feb. 24, 2021). Kevin should have but failed to disclose to South Carolina regulators the increased risk and uncertainty that arose in December 2016 as Westinghouse neared a momentous accounting deadline. A 24-month sentence is, therefore, consistent with similar cases wherein an executive in a decision-making role fails to make required disclosures.[6] A 24-month sentence is also supported by studies finding that

---

[6] For example, Ronald Ferguson, a former CEO of Berkshire Hathaway subsidiary General Reinsurance Corp. (known as "Gen Re"), was sentenced to 24 months imprisonment and fined $200,000 for his role in a fraud scheme that allegedly caused losses of between $544 million and $597 million. Unlike the current proceeding before this Court, Mr. Ferguson was sentenced after a six week jury trial and conviction on charges of conspiracy, securities fraud, false statements and mail fraud. *See* Judgment, *United States v. Ferguson*, No. 3:06-cr-137 (D. Conn. Dec. 31, 2008); *see also* Press Release, U.S. Dep't of Just., Former Gen Re Chief Executive Officer Sentenced for Role in Fraudulent Manipulation Scheme (Dec. 16, 2008), https://www.justice.gov/sites/default/files/usao-ct/legacy/2011/11/23/Ferguson12162008.pdf. The convictions of Ferguson and his co-defendants were subsequently vacated. *See United States v. Ferguson*, 676 F.3d 260, 294 (2d Cir. 2011). See also *United States v. Petit*, No. 1:19-cr-850 (S.D.N.Y. filed Nov. 25, 2019), a case against Parker H. Petit, former CEO of the publicly traded biopharmaceutical company MiMedx Group, Inc. Following a jury trial, Petit was sentenced to one year in prison in connection with

Government-sponsored sentences in white collar cases generally fall well below the minimum Guidelines range.[7]  In contrast, if the Court followed the Guidelines calculation in the PSR, Kevin's sentence would be far greater than the median sentences imposed in the District of South Carolina against offenders convicted of economic crimes such as fraud, theft or embezzlement (12 months imprisonment), or money laundering (15 months imprisonment).[8]

As already noted, Kevin is not alone in bearing responsibility in connection with the failed nuclear project.  Yet, notwithstanding charges against other former SCANA and Westinghouse officials, it is unknown at this time whether others will face any incarceration or other legal consequences for their conduct—making a case-specific analysis impossible.  Nonetheless, should the Court determine that the sentence recommended by the parties under Rule 11(c)(1)(C) constitues an unwarranted sentencing disparity, any such disparity is warranted given the level of

---

charges that he and others fraudulently caused approximately $35 million in investor losses when the company reported to the investing public that MiMedx was achieving consistent revenue growth, when in fact it would have missed revenue targets but for fraudulent accounting manipulations. Press Release, U.S. Dep't of Just., Former COO of Publicly Traded Biopharmaceutical Company Sentenced for Accounting Fraud (Feb. 24, 2021), https://www.justice.gov/usao-sdny/pr/former-coo-publicly-traded-biopharmaceutical-company-sentenced-accounting-fraud.

[7] According to research conducted by Jillian Hewitt of white collar sentences in the Southern District of New York, Government-sponsored below-Guidelines sentences were consistently ***90 percent shorter*** than the minimum Guidelines range. Jillian Hewitt, Note, *Fifty Shades of Gray: Sentencing Trends in Major White-Collar Cases*, 125 Yale L.J. 1018, 1051 (2016).  The research also found that non-Government-sponsored below-range sentences "were, on average, ***fifty to seventy percent shorter*** than the minimum Guidelines sentence." *Id.* (emphasis added).  For example, in *United States v. Gupta*, a high-profile conviction for conspiracy and insider trading, Judge Jed Rakoff rejected the Government's request for a sentence of 78 to 97 months imprisonment and sentenced the defendant to 24 months imprisonment (a 69.2 percent reduction), as well as a fine of $5,000,000. Sentencing Memorandum & Order, No. 1:11-cr-00907 (S.D.N.Y. Oct. 24, 2012).  In this case, the Probation Department calculated that, if not for the Rule 11(c)(1)(C) Plea Agreement, the applicable Guidelines range would be 57 to 71 months.  Kevin's Government-sponsored sentence of 24 months imprisonment would therefore reflect a reduction from the Guidelines range of only 57.9 percent—a reduction that is smaller than is typical of major white collar cases.

[8] U.S. Sentencing Commission, *Statistical Information Packet: Fiscal Year 2020, District of South Carolina*, tbl. 7, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2020/sc20.pdf.

Kevin's cooperation in both federal and state investigations, his nature and characteristics, and his need to care for his wife as described herein. The facts of the case as they relate to Kevin, along with his cooperation and personal circumstances support the sentence negotiated pursuant to Rule 11(c)(1)(C).

## III.     CONCLUSION

The recommended sentence of 24 months imprisonment, agreed upon by the parties pursuant to Rule 11(c)(1)(C), is "sufficient, but not greater than necessary" to accomplish all pertinent sentencing goals. For the reasons set forth above, Kevin respectfully requests that this Court accept the plea agreement negotiated between the parties and sentence him in accordance with the terms contained therein.

Dated: October 4, 2021                    Respectfully submitted,

                                          LAW OFFICES OF J. BRADY HAIR

                                          /s/  *Derk Van Raalte*
                                          Derk Van Raalte (Fed. ID 6508)
                                          Brady Hair (Fed. ID 5424)
                                          2500 City Hall Lane
                                          P.O. Box 61896
                                          North Charleston, SC 29419
                                          Tel: 843-572-8700
                                          Fax: 843-745-1082
                                          brady@bradyhair.com
                                          derk@bradyhair.com
                                          *Attorneys for Defendant Kevin Marsh*

                                          Anne M. Tompkins
                                          Cadwalader, Wickersham & Taft LLP
                                          227 West Trade Street
                                          Charlotte, NC 28202
                                          Tel: 704-348-5100
                                          Fax: 704-348-5200
                                          Anne.Tompkins@cwt.com
                                          *Attorney for Defendant Kevin Marsh*
                                          *Admitted Pro Hac Vice*

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that on this fourth day of October, 2021, I caused the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, and that such filing provided electronic notice to all counsel of record.

October 4, 2021

/s/ *Derk Van Raalte*
Derk Van Raalte
